IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANGELA A. POSEY,
      Plaintiff,

vs.                                  Case No. 3:07cv356/MCR/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

      Plaintiff's applications for DIB and SSI were filed on June 15, 2000 (Tr. 70–74, 243–47), and in each application Plaintiff alleged disability as of June 2, 2000, due to fibromyalgia, depression, decaying teeth, chronic diarrhea, migraine headaches, and constant pain in her hips,

knees, soles of her feet, and shoulder blades (Tr. 15–16, 314–15).[1]  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff appealed the denials to an administrative law judge (ALJ) (Tr. 48–69, 248–57).  The ALJ held an administrative hearing on January 28, 2002 (Tr. 23–24) and subsequently denied Plaintiff's claim in a decision dated May 22, 2002 (Tr. 12–22).  The Appeals Council denied Plaintiff's request for review (Tr. 5–6).  Thus, Plaintiff appealed the denial of benefits, and on February 3, 2004, the United States District Court for the Northern District of Florida reversed and remanded the case to the Commissioner for further development and a new decision (Tr. 332–43).  *See also* Case No. 3:03cv51/LAC/MD (N.D. Fla. (Docs. 16, 18)).  Specifically, this court's order directed that the Commissioner remand the case to an ALJ with instructions to gather additional medical records, and if indicated, have Plaintiff examined by a consulting physician, again review the record, and after a hearing, determine whether Plaintiff is disabled given the severity of her diarrhea and abdominal cramping in combination with any other severe conditions.  *See id.*

Upon remand, a second administrative hearing was held on August 23, 2005, at which newly developed evidence was admitted (Tr. 486–509).  On December 8, 2005, an ALJ again determined that Plaintiff was "not disabled," as that term is defined in the Act (Tr. 311–24).  On August 4, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 258–60).  Thus, the ALJ's decision, dated December 8, 2005, stands as the final decision of the Commissioner, subject to review in this court.  42 U.S.C. § 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.    FINDINGS OF THE ALJ

On December 8, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 311–24):

1)    Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits through December 8, 2005, the date of the ALJ's decision.

2)    Plaintiff engaged in substantial gainful activity/employment (SGA) from the alleged onset date of June 2, 2000 through July 31, 2000.  Thus, the relevant period of

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on November 28, 2007 (Docs. 8, 9).

disability under consideration commenced August 1, 2000, and Plaintiff has not engaged in SGA since that time.

3)   Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(b) and 416.920(b)).  These are: fibromyalgia, irritable bowel syndrome (IBS), chronic gastritis, and chronic fatigue syndrome.[2]

4)   Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)   Plaintiff's allegations regarding fatigue, and its limiting effect on her ability to perform work-related activities, are only partially credible.

6)   Plaintiff has the following residual functional capacity (RFC):  she can perform work at a sedentary to light level of exertion,[3] with limitations due to "easy fatigability" in all four extremities, and during an eight-hour workday, she can frequently lift or carry up to twenty pounds, occasionally lift or carry up to fifty pounds, sit eight hours, stand four hours, and walk four hours; further, she can only occasionally climb, balance, kneel, and crawl.

7)   Plaintiff has past relevant work as an industrial housekeeper (medium, unskilled), fast food worker (light, unskilled), and exotic dancer (light, semi-skilled).  Plaintiff is unable to perform her past work and has no transferable skills from her past work.

8)   Based on Plaintiff's RFC, she is able to perform other work available in the national and local economies.

9)   Plaintiff was not under a "disability," as defined in the Act, at any time through December 8, 2005 (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

---

[2]The ALJ found the following impairments to be non-severe:  depressive disorder, panic disorder, Fitz Curtis disease, and chronic obstructive pulmonary disease.

[3]Light work is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.   Personal History

Plaintiff was born on June 11, 1970, and has a General Educational Development (GED) diploma (Tr. 30–31).  She is four feet, eleven inches in height, and she weighed 99 pounds when she first applied for disability benefits (see, e.g., Tr. 81).  She remarried in November 2004, and at the

---

[4]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).  Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

time of her (second) hearing before an ALJ, she was living her husband (Tr. 488).  Before this

marriage, Plaintiff was known as Angela Bazemore, and the earlier case filed in this court was filed

under her former name (*see, e.g.*, Tr. 332).

    B.    Relevant Medical History

When Plaintiff's first appeal was before this court, the medical evidence was summarized

in a Report and Recommendation as follows:[5]

> The earliest entry in the administrative record is a September 7, 1998 visit by the plaintiff to the office of James W. Smith, M.D., a gastroenteriologist.  She reported a history of nausea and vomiting, but after being examined by Dr. Smith's Physician's Assistant she declined to wait to see the doctor (Tr. 231–232).  It appears that she did see the doctor at some point, however, because on October 2, 1998 she underwent a panendoscopy, during which her esophagus and stomach were examined.  Her esophagus was found to be normal, but there was some erosive gastritis in her stomach.  The exam was otherwise normal (Tr. 144).  Additionally, a colonoscopy was performed on December 7, 1998 which was normal, and the pathology report indicated that a specimen examined after the colonoscopy was likewise normal (Tr. 143, 153).
>
> Plaintiff then saw Dr. Smith on February 4, 1999 and reported that she was doing reasonably well (Tr. 230).  She returned on May 6, 1999 complaining of nausea, vomiting and diarrhea.  A small bowel series of x-rays was performed on May 13, 1999 and showed non-specific mild coarsening of the jejunal mucosa, as well as rapid transit.  A gallbladder sonogram performed the same day was read as normal (Tr. 152–153).
>
> Plaintiff returned to Dr. Smith seven months later, on January 18, 2000, with essentially the same complaints, and also complaining of weight loss.  Her physical examination was essentially normal and she was given a prescription for Pancrease (Tr. 141–142).  She returned to Dr. Smith on February 21 and reported that there had been some improvement with the medications (Tr. 140) but on March 15, 2000 she told Dr. Smith that she was not getting any relief with her medications.  She was therefore prescribed Lotronex (Tr. 138).  A second series of small bowel x-rays was performed on May 12, 2000, and was this time read as completely normal (Tr. 145).  On May 19, 2000, plaintiff returned to Dr. Smith and reported that she was losing weight, had no appetite, was not sleeping at night and that the Lotronex did not help her diarrhea.  Dr. Smith's assessment at that time was irritable bowel syndrome and possible fibromyalgia with depression (Tr. 22[6, 136]).  Plaintiff's condition was unchanged on Ju[ne] 11, 2000 (Tr. 137), and again on December 12, 2000 (Tr. 223–224).

---

[5]The references to the Transcript in the summary that follows, equally correspond to the Transcript in the instant case.

Case No. 3:07cv356/MCR/EMT

Plaintiff returned to Dr. Smith nearly a year later, on October 1, 2001, with the same complaints, and Dr. Smith indicated that more studies were needed. That same day he wrote a letter to plaintiff's counsel stating that plaintiff had had chronic problems with diarrhea, that she had undergone extensive evaluations, that because of the worsening of her condition she was to undergo further diagnostic studies, and that the intractable diarrhea had contributed to significant morbidity (Tr. 135). On November 13, 2001 another upper panendoscopy was performed and revealed a normal esophagus, minimal antral gastritis, and an otherwise normal examination (Tr. 237–238). The pathology report from that same procedure noted that the specimen taken from the duodenum was normal (Tr. 239). There are no further records from Dr. Smith.

Plaintiff was also treated at the Escambia Community Clinics, Inc., by Fulton DeFour, M.D. Plaintiff first appeared at the clinic on April 19, 2000 complaining of muscle spasm, low sugar and memory loss. The intake nurse noted that plaintiff was to see the doctor on June 2 of that year. Plaintiff saw Dr. DeFour on June 20, complaining of neck and shoulder inflammation. Dr. DeFour performed a physical examination which was noted to be within normal limits (Tr. 132–133). Plaintiff returned on July 28 complaining of aches and fatigue, and Dr. DeFour assessed fibromyalgia (Tr. 160). On August 21, 2000, Dr. DeFour filled out a residual functional capacity form, in which he opined that plaintiff could walk and stand for less than one hour and sit from one to two hours; could lift less than five pounds frequently and ten to twenty pounds only occasionally, was restricted from bending, suffered from mild to moderate depression and memory loss, would require a rest period every thirty to forty-five minutes during the day for thirty to forty-five minutes each, and would be disabled from full-time continuous employment (Tr. 173–174). Plaintiff was seen again by Dr. DeFour on August 24, again complaining of diarrhea and cramps as well as weight loss. Dr. DeFour again assessed fibromyalgia (Tr. 157). On October 31, 2000, Dr. DeFour noted fibromyalgia or chronic fatigue syndrome (Tr. 213). During 2001 plaintiff was seen at the clinic for an incident of apnea (Tr. 211), a toothache (Tr. 210), a possible urinary tract infection (Tr. 209), and hair loss (Tr. 205). On one visit plaintiff appeared for a checkup and complained that her medication was not strong enough and that she was unable to get a pulmonologist to see her. Dr. DeFour again noted fibromyalgia/chronic fatigue syndrome (Tr. 207).

The only other medical record is reported from a dentist, Dr. Morris, who on January 21, 2002 stated that plaintiff's dental problems were such that she needed to have all her teeth extracted (Tr. 241).

Plaintiff was examined by Steve Hirschorn, Ph.D., a psychologist, at the request of the Division of Disability Determinations [DDS]. Dr. Hirschorn's diagnosis was dysthymic disorder, major depression, single incident, panic disorder without agoraphobia in remission and alcohol abuse in remission. Dr. Hirschorn opined that plaintiff's depressive symptoms and anxiety would not interfere with her ability to be employed if they were her only difficulties, but that she reported that her physical problems were overwhelming her (Tr. 175–177).

(Case No. 3:03cv51/LAC/MD (N.D. Fla. (Docs. 16, Report and Recommendation, at 4–6)).

Following this court's earlier remand, additional evidence was obtained and is now part of the record.  First, the file now contains additional records from Dr. Smith, covering the period from April 2, 2004 through December 23, 2004 (Tr. 380–92).  On April 2, 2004, Plaintiff reported that her IBS and diarrhea had not "bothered her in some time," but she reported a recurrence of nausea and vomiting (Tr. 385–86).  Dr. Smith scheduled an abdominal ultrasound, and it was normal, as was a gastric emptying study (Tr. 384, 386).  On July 9, 2004, Plaintiff reported abdominal pain and fibromyalgia symptoms, but her "chronic nausea" had resolved, she had no diarrhea or constipation, and she was having a daily bowel movement (Tr. 382).  Dr. Smith noted:

> [Plaintiff] has had an abdominal ultrasound post cholecystectomy that was normal. She has had an unremarkable gastric emptying study.  She had bloodwork drawn on the 2nd of June [2004] that showed a normal complete metabolic panel, normal CBC, normal B-12 level, and normal thyroid studies.  She last underwent upper endoscopy in November of 2001, had a normal esophagus, minimal antral gastritis. Helicobacter was negative, and the rest of her upper panendoscopy was normal. Biopsy of the third portion of the duodenum was benign.  She had celiac serology that was unremarkable during that time frame.  She last underwent colonoscopy in 1998 because of persistent diarrhea, and she had a normal study at that time including intubation of a normal terminal ileum.

(Tr. 382).  Dr. Smith then ordered an abdominal CT scan "for further assessment" (Tr. 383).

On December 23, 2004, Dr. Smith noted that Plaintiff obtained the CT scan, and that it showed "no masses, lymphadenopathy or inflammatory change" (Tr. 380).  Similarly, he noted that lab studies from November 2004 revealed "normal amylase, normal sed rate, unremarkable CMP, and normal hemogram" (*id.*).  Plaintiff again reported some nausea, but she stated that marijuana helps her nausea (and her appetite), "so she is smoking marijuana on a very regular basis" (*id.*).  She also reported that she had recently remarried, her "new husband is much less stressful than her previous husbands were," she was not currently seeing a pain management physician, and she had recently been started on a new antidepressant (Cymbalta) for her fibromyalgia (*id.*).  Dr. Smith's assessment was:  "History of [IBS] and chronic abdominal discomfort; she appears to be doing much better now." (*id.*).

Next, the file now contains a report from Leo Chen, M.D., an orthopedic surgeon, dated April 18, 2005 (Tr. 404–13).  Following this court's remand, Plaintiff was referred to Dr. Chen by

the Social Security Administration (SSA) for an independent medical examination (IME) (*see* Tr. 404). Dr. Chen first noted Plaintiff's history of chronic fatigue, fibromyalgia, and IBS (*id.*). He then stated that Plaintiff "denies any bowel or bladder symptoms or any significant numbness or tingling or loss of ROM [range of motion]" (*id.*). Dr. Chen also observed that Plaintiff was "well developed" and "well nourished" (*id.*). In pertinent part, Dr. Chen found that Plaintiff had full ROM in the cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, ankles, and toes (Tr. 405–08). In summary, he noted that Plaintiff would have "no environmental or work related restrictions," but she would have "some physical work related restrictions, given her easy fatigability" (Tr. 405). Following Plaintiff's examination, Dr. Chen completed a form titled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 410–13). On the form, Dr. Chen noted that Plaintiff could frequently lift or carry up to twenty pounds, occasionally lift or carry up to fifty pounds, and never lift or carry more than fifty pounds — noting Plaintiff's "easy fatigability in all extremities" (Tr. 410). Dr. Chen further opined, that in an eight-hour workday, Plaintiff could sit a total of eight hours, in eight-hour intervals; stand a total of four hours, in three-hour intervals; and walk a total of four hours, in two-hour intervals (Tr. 411). He found that Plaintiff could continuously use both hands and feet, frequently stoop or crouch, and occasionally climb, balance, kneel, and crawl (Tr. 411–12). Additionally, Dr. Chen opined that Plaintiff could frequently reach, handle, feel, and push or pull, and she has no environmental restrictions (Tr. 412–13).

Plaintiff was also sent by the SSA to Roy Reyes, M.D., for another IME, which was conducted on May 5, 2005 (Tr. 393–96). Dr. Reyes recorded Plaintiff's weight at 99 pounds and noted that Plaintiff "look[ed] her stated age and well nourished" (Tr. 394). Plaintiff had no difficulty walking, bending, squatting, rising, dressing, undressing, and getting up from a chair or on or off the examining table (*see* Tr. 395). Her upper extremities were normal, with a normal range of motion and 5/5 strength (*id.*). Plaintiff's lower extremities were normal with the exception of an abnormal range of motion in the hips and ankles, 4/5 strength in each leg, and some pain and tenderness in the hips, soles of her feet, and ankles (*id.*). Seated and supine straight leg test were negative at 70 degrees, no paravertebral muscle spasms were present, and Plaintiff could bend forward to her ankles, although bending caused some pain in her lower back and knees (*id.*). Dr.

Reyes noted that "[Plaintiff] fatigues out with increased activities.  Deep tendon and plantar reflexes were diminished.  Knees and ankle reflexes sluggish 1+.  Abdominal reflexes normal and intact. Touch, pinprick, and vibration were abnormal.  Hands and feet tingling and occasional numbness reported." (*id.*).  Finally, Dr. Reyes noted that Plaintiff's gait and coordination were normal, and she did not need an assistive device (*id.*).  Dr. Reyes diagnosed Plaintiff with fibromyalgia, IBS, chronic fatigue syndrome, and chronic obstructive pulmonary disease.

Dr. Reyes, like Dr. Chen, completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 400–03).  On this form, Dr. Reyes opined that Plaintiff could occasionally lift or carry up to ten pounds, but never more than ten pounds (Tr. 400).  He opined that Plaintiff's "lower back and multiple joints [sic] pains interferes with her lifting, bending, carrying, etc. . . . " (*id.*).  Dr. Reyes further opined, that in an eight-hour workday, Plaintiff could sit a total of four hours, in one-hour intervals; stand a total of two hours, in one-hour intervals; and walk a total of one hour, in a one-hour interval (Tr. 401).  He noted that Plaintiff has "fibromyalgia symptoms [and is] unable to stay on a position for a long time" (*id.*).  Next, Dr. Reyes opined that Plaintiff's ability to perform "simple grasping" is frequently limited, and her ability to perform "fine manipulation" is occasionally limited in each hand (*id.*).  She has only occasional limitations in the use of her feet (*id.*).  Dr. Reyes noted that his assessment regarding Plaintiff's hands and feet was based on Plaintiff's reports of stiffness, numbness, and aches and pain (*see id.*).  Dr. Reyes further opined that Plaintiff should never climb or balance, but she can occasionally stoop, crouch, kneel, crawl, and push or pull, and she can frequently reach, handle, and feel (Tr. 402).  He further noted that Plaintiff would be restricted in the following environmental conditions: heights, moving machinery, noise, humidity, temperature extremes and vibrations, but Dr. Reyes did not state to what extent Plaintiff was restricted (i.e., whether she was to avoid "all" exposure, or only moderate or concentrated exposure to these conditions (*see* Tr. 403)).  In conclusion, Dr. Reyes opined that Plaintiff "would have difficulty performing any work-related activities from what I can see," and he suggested that Plaintiff undergo further evaluation by various specialists (Tr. 396, 403).

Finally, the file contains additional records from Dr. DeFour (Tr. 414–85).  In April 2005, Plaintiff presented for labwork, but she had "no new health concerns" (Tr. 484).  All of her labwork was "normal," as was Plaintiff's physical examination (*see* Tr. 485).  The records generally reflect

that Plaintiff returned to Dr. DeFour for medication refills, and with complaints of fibromyalgia or fibromyalgia-related symptoms, while her physical examinations remained generally unremarkable (*see, e.g.*, Tr. 425 (March 2005 office visit), 478–79 (June 2005 office visit), 476–77 (July 2005 office visit)).  Plaintiff was "counseled at length regarding [her] use of narcotic pain med[ications]," and she was advised to start weaning off pain medications in June/July 2005 (Tr. 477, 479).

C.       Other Information Within Plaintiff's Claim File

At her second hearing before an ALJ, Plaintiff testified that her weight had been at 97 pounds for five years (Tr. 314).  She testified that her IBS alternates between diarrhea and constipation.  She was experiencing constipation at the time of the second hearing (Tr. 493–94).  She still has stomach cramps and appetite loss.  She was diagnosed with Fitz-Hugh-Curtis, which causes her liver to put out bacteria and causes scar tissue to grow.  This condition causes pain under her rib cage, and she has had surgery twice to remove scar tissue (Tr. 494–95).

Plaintiff contends that due to her fibromyalgia, she has stomach problems, memory problems, headaches, and "female problems."  She is tired all of the time, and she cannot sit or stand for long periods.  If she sits long, her muscles tighten up.  She states that she must spend most of her time lying down (Tr. 493–94).  She experiences pain in her back, neck, legs, shoulders, arms, hips, and feet.  Her fibromyalgia causes her muscles to be sore and tender all of the time, and she sleeps most of the day (Tr. 494).  Finally, Plaintiff testified that she continues to have severe headaches once or twice a week that last all day, they make her sick to her stomach, and she cannot tolerate any light or noise with such a headache (Tr. 495–96).

V.   DISCUSSION

Plaintiff raises several issues in the instant appeal.  First, Plaintiff contends the ALJ erred in rejecting the opinions of Dr. Reyes, an IME, as well as those of Dr. DeFour and Dr. Smith, treating physicians (Doc. 14 at 13).  Plaintiff additionally contends that the ALJ erred in his consideration of the testimony of the Vocational Expert, and she appears to have possibly raised an issue regarding the ALJ's consideration of her subjective complaints (*see id.* at 13, 16–19).

A.       Weighing the Opinions of Treating and Examining Physicians

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436,

1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Commissioner of Social Security,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e).  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's

regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do any work, and the physician subsequently wrote a letter saying the claimant was completely disabled.  To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Additionally, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  20 C.F.R. § 404.1566. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Finally, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.  *See* <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing <u>Bentley v. Shalala</u>, 52 F.3d 784, 787 (8th Cir. 1995)).  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981).[6]

Initially, although Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Smith, Plaintiff has not identified which of his opinions were allegedly rejected (*see* Doc. 14 at 13–15).  Moreover, while Plaintiff generally asserts that the ALJ erred in rejecting the "treating physician" opinions of both Dr. DeFour and Dr. Smith, Plaintiff's argument in support addresses only the opinions of Dr. DeFour (*id.*).  Thus, the court is unaware of the precise nature of Plaintiff's argument regarding Dr. Smith.  Nevertheless, the court has carefully reviewed the ALJ's decision and his consideration of Dr. Smith's records to determine whether the ALJ erred in this regard.  After doing so, the court first notes that the ALJ clearly recognized that Dr. Smith treated Plaintiff, as he summarized Dr. Smith's records from approximately 1998 through July 2004 (Tr. 317).  The ALJ also noted, in pertinent part, that Plaintiff had been diagnosed with IBS and gastritis by Dr. Smith, and the ALJ determined that each of these impairments were "severe" (Tr. 315, 317).  Thus, the ALJ appears to have <u>relied on</u> Dr. Smith's opinions, at least in part, in determining that Plaintiff had "severe" impairments.

The ALJ did indicate that he was not assigning "significant weight" to a letter written by Dr. Smith in October 2001 (Tr. 321).  In relevant part, the letter described Plaintiff's weight loss and diarrhea that "contributed to significant morbidity in this patient with this associated disability" (Tr. 135, 319).  In failing to assign significant weight to the letter, the ALJ first observed, correctly, that "the finding as to whether an individual is disabled or has a 'disability' is reserved for the Commissioner" (Tr. 321).  Indeed, the Commissioner "will not give any special significance to the source of an opinion on issues reserved for the Commissioner." 20 C.F.R. § 404.1527(e)(3).  *See*

---

[6]The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions prior to October 1, 1981, and all former Fifth Circuit Unit B decisions after October 1, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); <u>Stein v. Reynolds Securities, Inc</u>., 667 F.2d 33, 34 (11th Cir. 1982).

*also* 20 C.F.R. § 404.1527(e)(1) (a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion); Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").

Additionally, the ALJ noted that extensive testing failed to return abnormal results, and Plaintiff often reported doing better or lacking symptoms (*see* Tr. 317). The ALJ also stated, "Dr. Smith indicated that 'exhaustive' workups from similar symptoms [e.g., weight loss, diarrhea] in the past had resulted in negative findings with 'spontaneous improvement.'" (*id.*). Further, the ALJ noted that Plaintiff last saw Dr. Smith in July 2004, and at that time he opined that Plaintiff was "doing much better now" (*id.*). The ALJ's statements are supported by the record, and the court finds no error.

Finally, the ALJ noted that Dr. Smith "failed to elaborate as to any particular disabling characteristics" of Plaintiff's condition, and similarly, that Dr. Smith offered no "specific functional limitations" resulting from Plaintiff's impairments (Tr. 317, 319). Indeed, consistent with the ALJ's statements, the court's own review of the file does not reveal that Dr. Smith offered any specific functional limitations, and Plaintiff has not identified any such limitations in Dr. Smith's records (nor any such limitations in Dr. Smith's records that were rejected by the ALJ). To the extent the ALJ considered the lack of any functional limitations by Dr. Smith in evaluating Plaintiff's credibility (as discussed more fully below) or in finding Plaintiff not disabled, the ALJ did not err. *See* Singleton v. Astrue, 542 F. Supp. 2d 367, 378–79 (D. Del. 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled"); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964–65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

In sum, the ALJ properly rejected the October 2001 opinion of Dr. Smith that Plaintiff was "disabled." The ALJ clearly articulated his reasons for rejecting Dr. Smith's opinion, the reasons stated are supported by substantial evidence in the record, and Plaintiff is not entitled to reversal on this ground.

With regard to Dr. DeFour, the ALJ summarized his opinions as contained on an August 2000 RFC assessment form, including Dr. DeFour's opinion that Plaintiff was "disabled from full-time continuous employment," but the ALJ did not assign "significant weight" to these opinions (Tr. 173–174, 318, 320).

Before discussing the ALJ's reasons for discrediting Dr. DeFour's opinions, it is worth noting that his opinions are contained on a two-page, preprinted, "Assessment of Physical [RFC]" form, that contains very little explanation for the opinions (Tr. 173–74).  For example, Dr. DeFour checked a box on the form indicating that Plaintiff is "disabled from full-time continuous employment," but he did not state underline why he believes Plaintiff is disabled (Tr. 174).  Similarly, although Dr. DeFour indicated that Plaintiff has physical limitations, he also indicated that Plaintiff suffers from mild to moderate depression and memory loss, but he does not explain whether Plaintiff is "disabled" as a result of mental limitations, physical limitations, or a combination thereof (Tr. 173–74).  Additionally, Dr. DeFour provided seemingly inconsistent opinions on the form.  To illustrate:  Dr. DeFour opined that Plaintiff has no limitations with regard to "bi-manual dexterity," but he found her limited with regard to "fine/gross manipulation"; he further opined that Plaintiff could bend and kneel, but she could not climb ladders or stairs (*id.*).  While these may not be glaring inconsistencies, it would seem that an explanation is warranted, especially with regard to "bi-manual dexterity" and "fine/gross manipulation" because these appear to be the same thing, but Dr. DeFour found Plaintiff capable of doing one but not the other.  Finally, and similarly, in responding to a question regarding whether Plaintiff has any environmental limitations, Dr. DeFour indicated "yes with cold temperatures," but he failed to provide any basis or explanation for this opinion (Tr. 174).

In discrediting Dr. DeFour's opinions on the above-described form, the ALJ first noted that at the time the opinions were rendered, Dr. DeFour had been treating Plaintiff for only a few months (Tr. 320).  Indeed, the earliest treatment record from Dr. DeFour is dated April 19, 2000 (Tr. 165), and the opinions at issue were rendered on August 21, 2000 (Tr. 173–74).  Moreover, it appears that Plaintiff was seen by Dr. DeFour on only three occasions before the opinions were rendered (*see* Tr. 165, 161A, 132, 160, 159 (reflecting Plaintiff's office visits at the Escambia County Clinics, Inc., on April 19, June 2, June 20, July 28, and August 2, 2000, but Plaintiff did not see Dr. DeFour on the April and August visits (*see* Tr. 165, 159)).  Thus, although the ALJ made a minor misstatement

in stating that Dr. DeFour had treated Plaintiff for less than <u>two</u> months when he rendered the opinions (Tr. 320), when Plaintiff had actually been a patient at his clinic for about four months, the record nevertheless confirms that only a short treating relationship existed before Dr. DeFour rendered the opinions at issue.  This is a valid factor to be considered, and it is specifically set forth in the regulations as one of the factors that should be considered.  *See* 20 C.F.R. § 404.1527(d)(2) (with regard to weighing medical opinions, "the longer a treating source has treated [a claimant] and the more times [a claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion").

Next, the ALJ noted that Dr. DeFour's opinions are not supported by his treatment records (Tr. 320).  For example, the ALJ noted that on the RFC assessment/form, Dr. DeFour indicated that Plaintiff's sight was impaired due to "myopia," but the records do not reflect that Plaintiff was ever diagnosed with myopia (Tr. 174, 320–21).  Additionally, Dr. DeFour performed a physical examination on June 2, 2000, which included an examination of Plaintiff's bones, joints, muscles, and extremities, each of which were found to be "WNL [within normal limits]" (Tr. 161A).  Similarly, when Plaintiff saw Dr. DeFour on June 20, 2000, complaining of pain in her right shoulder, knots in the back of her neck, and tightening of her lower back muscles, Dr. DeFour performed a physical examination which was also noted to be within normal limits (Tr. 133).  Thus, the record supports the ALJ's statement that Dr. DeFour's treatment records are inconsistent with his opinion that Plaintiff is "disabled."

The ALJ also stated that Dr. DeFour's "opinion appeared to consider [Plaintiff's] emotional problem of mild to moderate depression, yet the record reflects that three days after his assessment, he examined [Plaintiff], noted that she was not taking the prescribed Zoloft medication and advised her to seek a psychiatric evaluation 'on her own'" (Tr. 321).  Indeed, Plaintiff was prescribed Zoloft by Dr. DeFour on June 2, 2000 (Tr. 161A), but on August 24, 2000, three days after the opinions at issue were rendered, Dr. DeFour specifically noted that Plaintiff was not taking the Zoloft (Tr. 157).  Similarly, when Plaintiff was referred to Dr. Hirshcorn by the DDS in October 2000, she advised him that Dr. DeFour had prescribed Zoloft, but she was not taking it, and she denied ever having participated in counseling (Tr. 176).  Thus, to the extent Dr. DeFour opined that Plaintiff was "disabled" as a result of her depression, the ALJ properly considered the fact that she did not take

Zoloft as prescribed by Dr. DeFour.  *See* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability); *see also* <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported . . . .").  Similarly, as the ALJ noted, Dr. DeFour's office notes from August 24, 2000, reflect that Plaintiff would obtain a psychological evaluation on her own (Tr. 157, 321), but she reported to Dr. Hirshcorn that she had never been in any type of counseling, so she obviously did not obtain a psychological evaluation on her own as she discussed with Dr. DeFour.[7]  *See, e.g.*, <u>Williams v. Sullivan</u>, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is non-severe).

Finally, as noted above, the ALJ properly recognized that the question of whether of not a claimant is "disabled" is reserved to the Commissioner.  Thus, like the ALJ's consideration of Dr. Smith's opinions, the ALJ did not err in rejecting the opinions of Dr. DeFour, including his opinion that Plaintiff is "disabled from full-time continuous employment."  The ALJ articulated his reasons for rejecting Dr. DeFour's opinions, the reasons stated are supported by substantial evidence in the record, and Plaintiff is therefore not entitled to relief on this ground.

Having properly rejected the opinions of Dr. Smith and Dr. DeFour, the ALJ was left to consider the opinions of Dr. Chen and Dr. Reyes, each of whom conducted an IME at the request of the SSA.[8]  In short, the ALJ accepted the opinions of Dr. Chen over those of Dr. Reyes, and Plaintiff contends the ALJ erred in doing so (Doc. 14 at 15–16).

In accepting the opinions of Dr. Chen over Dr. Reyes, the ALJ first noted that Dr. Chen had reviewed Plaintiff's medical records "at length" (Tr. 320).  The record confirms the ALJ's statement (*see* Tr. 405 (statement by Dr. Chen that he had "reviewed [Plaintiff's] history and medical record

---

[7]Additionally, Plaintiff's file contains no evidence of psychological counseling or treatment <u>after</u> Dr. Hirshcorn's evaluation in October 2000.

[8]As this court is well aware, the opinion of a consultative examiner is not entitled to the same degree of weight as that of a treating physician.  However, where substantial record evidence supports the ALJ's decision to discount a treating physician's opinion, the opinion of an examining physician itself becomes entitled to significant weight.  *See* 20 C.F.R. § 404.1527(d); <u>Richardson</u>, 402 U.S. at 389 (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant).

at length")).  Moreover, Dr. Reyes did <u>not</u> indicate in his report that he had reviewed any of Plaintiff's medical records (*see* Tr. 393–96).  Thus, Dr. Chen formed his opinions, based not only upon on his personal observations of Plaintiff and her subjective complaints — as did Dr. Reyes, but upon those factors <u>and</u> Plaintiff's documented medical history.  At a very basic level, this lends more credibility to Dr. Chen's opinions, as they are based on a more thorough understanding of Plaintiff's condition, and the ALJ properly considered this factor.

Next, the ALJ noted that Dr. Chen is an orthopedic specialist, while Dr. Reyes is a family practitioner (Tr. 320).  This, too, was a proper consideration.  *See* 20 C.F.R. § 404.1527(d)(5) (providing that "more weight [is given] to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist").  In a related statement, the ALJ further discounted Dr. Reyes's opinion by noting that Dr. Reyes himself indicated that Plaintiff should be evaluated further by various specialists, <u>including an orthopedist</u> (Tr. 320, 403).  Although Dr. Reyes recommended that Plaintiff be referred to additional specialists, including a rheumatologist, gastroenterologist, and pulmonary specialist, and the SSA did not send Plaintiff to all of those specialists (to which Plaintiff takes issue), the point of the ALJ's statement was that Dr. Reyes's opinions are entitled to less weight because they are not necessarily definitive.  Dr. Reyes recognized that some of Plaintiff's conditions were outside his normal area of practice or expertise and that she should be referred to other specialists.  Again, the ALJ did not err in considering this factor.

Finally, while Dr. Reyes suggested additional examinations by other specialists, the SSA was under no obligation to provide those.  The seminal cases in this circuit on the ALJ's duty to develop the record are <u>Ford v. Sec'y of Health and Human Serv's</u>, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and <u>Reeves v. Heckler</u>, 734 F.2d 519 (11th Cir. 1984).  Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision.  Where he has sufficient information to decide the case, however, he can do so.  <u>Graham v. Apfel</u>, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made).  In the instant case, the ALJ clearly had sufficient information before him, and he did not need to order further examinations to make an informed decision; therefore, the ALJ did not err.  *See*

*also* Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003) ("Overall, while it is the ALJ's duty to develop the record . . . the ALJ is under no duty to provide continuing medical treatment for the claimant." ).

Although evidence in the record arguably exists to support a decision contrary to that reached by the ALJ, the court is limited in its inquiry and is not empowered to reweigh the evidence.  *See generally* Martin, 894 F.2d at 1529 (the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner); Sewell, 792 F.2d at 1067 (even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).   In other words, whether the evidence could have supported an alternative conclusion is not the issue. Thus, Plaintiff is not entitled to relief based on the fact that the ALJ could have reached a different decision, as long as the decision made is supported by substantial evidence and was the result of the application of proper legal standards — as it is here.

B.     Testimony of the Vocational Expert (VE)

Next, Plaintiff contends that the ALJ erred in failing to ask the VE "about any possible conflict between the VE's testimony and the DOT [Dictionary of Occupational Titles]" (Doc. 14 at 19) (emphasis added).  Plaintiff similarly asserts that an ALJ is required to elicit from a VE "an explanation for an apparent conflict," and that the ALJ's failure to do so in this case is reversible error (*id.* at 18–19) (emphasis added).  In support of her argument, Plaintiff relies on SSR 00-4, which places an affirmative duty upon the ALJ to ask the VE about any such conflicts (*id.* at 17). Notably, however, Plaintiff does not assert that any "possible," "apparent," or actual conflict exists between the VE's testimony and the DOT (*see id.* at 16–19).  As a result, the court is again called upon to review an alleged error that has not been clearly articulated by Plaintiff.

Initially, Plaintiff states that the Eleventh Circuit has not specifically addressed SSR 00-4, as it relates to the issue before this court (*id.* at 17), while other Circuits have remanded cases for further administrative proceedings when an ALJ failed to inquire about conflicts with the DOT (*id.* at 18 (citing Seventh and Tenth Circuit cases)).  Thus, it is debatable whether a remand is necessary

if an ALJ fails to ask about a conflict.[9]  Here, however, any <u>arguable error</u> is harmless because there are no "apparent" or "possible" conflicts.  Plaintiff has pointed this court to none, and the court's own review of the VE's testimony reveals none.

In pertinent part, the VE testified (based on Plaintiff's RFC and the opinions in the record the ALJ found credible) that Plaintiff could not return to her past relevant work, but she could perform other available work in the national and local economies (Tr. 505).  Specifically, the VE identified some <u>light</u> jobs that would permit an individual, such as Plaintiff, to alternate between sitting for a period of time and standing, including toll collector, storage facility rental clerk, and small products assembler (Tr. 505– 06).  The VE further testified that Plaintiff could perform the "full range of . . . <u>sedentary</u>, unskilled jobs," and that 1,500,000 such jobs are available in the national economy and approximately 20,000 are available in Florida (Tr. 507).  While the ALJ did not ask if there was a conflict with the requirements of the jobs identified by the VE and the DOT, no conflict is apparent to this court.  Moreover, even if there was a conflict with a particular job identified by the VE, the ALJ would have nevertheless reached the same decision, considering that the VE testified that Plaintiff could perform numerous available jobs, including the three light jobs he identified, as well as the "full range" of sedentary, unskilled jobs.  *See* <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . .").  Thus, Plaintiff is not entitled to relief on this ground.

---

[9]The court notes that in an unpublished decision, the Eleventh Circuit recently stated, "If there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT."  <u>Miller v. Comm'r of Soc. Sec'y</u>, 246 Fed Appx. 660, 661–62 (11th Cir. Aug. 31, 2007).  *See also* <u>Corbitt v. Astrue</u>, 2008 WL 1776574, *6 (M.D. Fla. Apr. 17, 2008) (finding that in light of <u>Miller</u>, <u>Jones v. Apel</u>, 190 F.3d 1224, 1229–30 (11th Cir. 1999) (which noted that the VE's testimony "trumps" the DOT, but was decided prior to the SSA's publication of SSR 00-4 in December 2000), is binding precedent, and therefore, even assuming a conflict existed between the testimony of the VE and the DOT, an ALJ's failure to resolve the conflict does not constitute reversible error).  Thus it appears, at least in the Eleventh Circuit, that the ALJ is not required to ask about conflicts because the VE's testimony trumps the DOT.

C.      Plaintiff's Credibility

Finally, although Plaintiff does not necessarily contest the ALJ's findings regarding her credibility, the issue is briefly mentioned in the memorandum in support of her complaint (*see* Doc. 14 at 13).  Thus, for the sake of completeness, the undersigned has reviewed the ALJ's findings in this regard.  In pertinent part, after correctly identifying the Eleventh Circuit's pain standard (*see* Tr. 313–14), the ALJ found Plaintiff less than fully credible (Tr. 321–22).

In discounting her allegations, the ALJ first noted that during the relevant period of disability, Plaintiff "experienced significant periods of time where she was relatively symptom free" (Tr. 321).  As an example, the ALJ referenced Dr. Smith's records from April 2004, where Plaintiff reported that her IBS had not bothered her for some time (Tr. 321, 385).  In addition to other factors (*see* Tr. 317), the ALJ also noted that Plaintiff had not seen Dr. Smith for several years prior to April 2004 (Tr. 321).  Indeed the previous record from Dr. Smith is dated November 2001 (*see* Tr. 237–38).  The ALJ also noted the lack of any functional limitations noted by Dr. Smith, Plaintiff's report to Dr. Smith that "she was doing much better now," Dr. Smith's statement that "'exhaustive' workups in the past" were negative[10] and Plaintiff "spontaneously improved," and Plaintiff's failure to follow prescribed treatment (Tr. 317, 321).  Moreover, the ALJ referenced Plaintiff's daily activities, including cooking breakfast daily, doing laundry, shopping, and taking care of her personal needs, as she reported to Dr. Hirschorn (Tr. 321, 177).  The ALJ may properly consider daily activities when evaluating subjective complaints of disabling pain and other symptoms.  *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).

The ALJ is entitled to consider inconsistencies between a claimant's subjective complaints and the evidence of record.  *See* McCray v. Massanari, 175 F. Supp.2d 1329, 1338 (M.D. Ala. 2001).  While any one of the above inconsistencies alone might not be enough to find Plaintiff's subjective complaints not credible, certainly the totality of the inconsistencies provide, at the very least, substantial evidence supporting the ALJ's decision that Plaintiff was not credible.  Because the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's testimony regarding her

---

[10]Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility.  *See* 20 C.F.R. § 404.1529(c).

subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed.  *See* Foote, 67 F.3d at 1562; MacGregor, 786 F.2d at 1054.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 27th day of August 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**